UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSE CONTRERAS INIGUEZ,

Petitioner,

v.

JOHN MATTOS, et al.,

Respondents.

Case No. 2:26-cv-01635-ART-DJA

ORDER GRANTING HABEAS PETITION (ECF NO. 10)

Petitioner Jose Contreras Iniguez has been detained in the Nevada Southern Detention Center since March 10, 2026. He brings this habeas petition (ECF No. 10) against Respondents to challenge his unlawful detention. The Court finds that Petitioner is entitled to a constitutionally adequate bond hearing, given the procedural deficiencies that occurred as Petitioner previously sought release on bond. The Court now grants his petition for habeas corpus and orders that Petitioner be provided with a constitutionally adequate bond hearing.

## I. Background

Petitioner is a citizen of Mexico who arrived in the United States in 2004 and has lived continuously in the country for 22 years. (ECF No. 10 at 1). He has two children who are United States citizens and a wife who is a legal permanent resident. *Id.* On January 31, 2026, Petitioner was arrested in connection with a domestic violence incident with his wife. *Id.* at 4. He was unable to meet bail and remained in jail until March 9, 2026, when he entered a guilty plea to conspiracy to commit a crime and battery constituting domestic violence. (ECF No. 10-1 at 20). Petitioner has two other prior convictions—a DUI in September 2009 and a

misdemeanor conviction for battery constituting domestic violence in September 2021. (ECF No. 10 at 4).

Petitioner was immediately transferred into ICE custody on March 10, 2026, after entering his guilty plea. *Id.* The ICE I-213 form indicates that he was served with a copy of the *Jacobo-Ramirez* class action notice that day. (ECF No. 10-1 at 5, *see Jacobo-Ramirez v. Mullin*, 834 F.Supp.3d 1073 (D. Nev. 2026)). The I-213 form includes both of Petitioner's prior convictions, as well as pending charges stemming from the January 2026 arrest. (ECF No. 10-1 at 4).

On May 4, 2026, Petitioner had a custody redetermination hearing before an immigration judge ("IJ"). (ECF No. 10 at 4; ECF No. 11 Exhibit C). The IJ acknowledged that it "appears" that Petitioner is a member of the *Jacobo-Ramirez* class. *Id.* While the government did not affirmatively assert that Petitioner was a member of the class, they acknowledged his possible class membership and "deferred" to the IJ on the question of jurisdiction. *Id.* Petitioner speaks Spanish and all of the questions and responses directed to and from Petitioner were translated. *Id.* However, the IJ directly asked the government about Petitioner's criminal record: both the question and answer were not translated into Spanish. (ECF No. 10 at 4–5).

From the bench, the IJ denied bond on May 4, 2026, based on her finding of dangerousness. (ECF No. 11 Exhibit C). The IJ did not state on the record which party bears the burden of proof, instead stating that the "court" must determine whether Petitioner posed a danger to the community. *Id.* The IJ specifically pointed to Petitioner's two domestic violence convictions within the past five years as constituting sufficient dangerousness and stated she believed

a reviewing court would be unlikely to grant his release from detention. *Id.* In her written order, the IJ stated that Petitioner is a "danger to the community" because he "has twice been convicted of domestic violence offenses." (ECF No. 10-2). At the bond hearing, Petitioner waived his right to appeal. (ECF No. 11 Exhibit C).

On June 15, Petitioner had a removal hearing before an IJ for his application for cancellation of removal. (EFC No. 11 Exhibit E). The IJ ruled that Petitioner was removable to Mexico. (*Id.*; ECF No. 14 at 2). After questioning the judge about what an "appeal" was, Petitioner waived his appeal at the hearing. (ECF No. 11 Exhibit E; ECF No. 10 at 5).

Petitioner has a pending appeal of his final removal order before the BIA that was filed on August 6, 2026. (ECF No. 19). Petitioner asserts that he filed an initial appeal that was received by the BIA on June 29, 2026, prior to the 30-day deadline to appeal a final removal order. (ECF No. 14 at 1). Petitioner claims that he was provided incomplete paperwork by the Nevada Southern Detention Center that was missing a page concerning proof of service. *Id.* at 1–2. The BIA rejected Petitioner's original, defective appeal. *Id.* at 2. With the assistance of counsel, Petitioner refiled his appeal on August 6, 2026, with a motion to accept a late-filed appeal. (*Id.*; ECF No. 19). As of now, the appeal is marked "pending" within the BIA Executive Office for Immigration Review ("EOIR") automated case information system. (ECF No. 19).

## II. Legal Standards

### A. Habeas Corpus Under 28 U.S.C. § 2241

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S.

507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B. Due Process**

Noncitizens present in the United States are entitled to due process protections. *See, e.g., Trump v. J.G.G.*, 604 U.S. 670 (internal citations and quotations omitted) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."); *Zadvydas*, 533 U.S. at 693 (applying due process in the context of detention). The rights of noncitizens include rights to "notice and opportunity to be heard 'appropriate to the nature of the case.'" *J.G.G.*, 604 U.S. at 673 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); *see also Mathews v. Eldrige*, 424 U.S. 319, 332 (1976).

To determine whether detention violates procedural due process, courts in the Ninth Circuit typically apply the *Mathews* test. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (observing that the Ninth Circuit and other circuits continue to apply the *Mathews* test notwithstanding the Government's heightened interest in detaining immigrants.) Under that three-part test, the

court weighs (1) the private interest at stake, (2) the risk of an erroneous deprivation of that private interest and the value of additional safeguards, and (3) the Government's countervailing interests. *Id.*

**III. The Court Has Jurisdiction Over Petitioner's Habeas Petition**

Respondents maintain that this Court lacks jurisdiction over Petitioner's habeas petition, because Petitioner is subject to a final removal order and detained pursuant to 8 U.S.C. § 1231(a). (ECF No. 14 at 9). Because Petitioner filed an untimely appeal of his final removal order, Respondents argue that the removal order is in effect and Petitioner is thus subject to mandatory detention under § 1231(a). *Id.* Accordingly, Respondents characterize Petitioner's petition as a claim "arising from a decision or action to 'execute' a final order of removal," which district courts are precluded of exercising jurisdiction over pursuant to 8 U.S.C. § 1252(g). *Id.* at 6–7. In turn, Petitioner argues that his appeal is currently "pending" before the BIA (according to available EOIR information), and with no further action taken, he remains subject to discretionary detention pursuant to 8 U.S.C. § 1226(a). (ECF No. 19 at 2). Petitioner claims that the final removal order is therefore not "administratively final" due to the pending second appeal. (ECF No. 10 at 2).

The Court agrees that the final removal order is not "administratively final," given that Petitioner's appeal and accompanying motion to file an untimely appeal are pending. Under 8 U.S.C. § 1252(a)(1)(B), mandatory detention is concurrent with the "removal period," which begins on: "the latest of the following: (i) The date the order of removal becomes administratively final …" 8 U.S.C. § 1231(a)(1)(B)(i). The BIA has yet to decide on Petitioner's motion to file an untimely appeal. While Petitioner argued at oral argument that a "pending" appeal means that the appeal has been accepted, or at least that removal is stayed, Respondents argued that "pending" merely referred to the BIA's receipt of

the appeal. At a minimum, it is clear that Petitioner's appeal has not been dismissed. In either characterization of the pending appeal, this Court finds that more action is needed from the BIA on the appeal and accompanying motion before the June 15, 2026 removal order can be considered "administratively final." Courts within the District of Nevada have held that a pending appeal before the BIA of a final removal order prevents the order from having final effect. *See Pineda v. Mattos*, 2026 WL 2655253 at *1-2 (D. Nev. Sept. 9, 2026); *Mendez v. Mattos*, 2026 WL 1091826 at *2 (D. Nev. Apr. 22, 2026); *Cruz v. Blanche*, 2026 WL 1113484 at *1 (D. Nev. Apr. 23, 2026).

Until the BIA decides on the status of Petitioner's appeal, this Court finds that Petitioner is not yet subject to a final removal order. Thus, Petitioner is not subject to mandatory detention under § 1231(a), but instead subject to discretionary detention under 8 U.S.C. § 1226(a). This Court therefore possesses jurisdiction over the habeas petition.

## IV. Due Process Entitles Petitioner to a Constitutionally Adequate Bond Hearing

Both parties acknowledged, in either briefing or oral argument, that Petitioner was initially detained under 28 U.S.C. § 1226(a) and was at least initially a member of the *Jacobo-Ramirez* class. *See Jacobo- Ramirez v. Mullin*, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026). Under § 1226(a) and the class-wide declaratory judgment and vacatur order in *Jacobo-Ramirez*, Petitioner was entitled to a constitutionally adequate bond hearing. Respondents failed to respond—either in briefing or at oral argument—to Petitioner's arguments that his bond hearing was constitutionally deficient. For the reasons addressed below under the *Mathews* test, 424 U.S. 319 (1976), Petitioner's due process rights were violated by an inadequate custody redetermination hearing for bond.

Petitioner's private interest in liberty is significant. "Freedom from bodily

restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas v. Davis*, 533 U.S. 678, 696 (2001). With respect to *Jacobo-Ramirez* class members detained under § 1226(a), courts have found a "fundamental liberty interest in being free from incarceration." *Sira v. Mattos*, 2026 WL 1362499 at *2 (D. Nev. May 15, 2026); *Jiminez Gomez v. Dep't of Homeland Sec.*, 2026 WL 1164736 at *3 (D. Nev. Apr. 29, 2026); *Suarez v. Balaam*, 2026 WL 1907197 at *6 (D. Nev. July 2, 2026) ("That interest is especially weighty considering the lack of process they received, and that has been available to them, upon their arrest and throughout their detention."). Petitioner has been detained since March 10, 2026, without an adequate opportunity to seek release.

Second, there is a strong risk of erroneous deprivation of Petitioner's liberty interest. Because Petitioner was unable to understand or respond to any of the adverse testimony offered against him, he was unable to meaningfully participate in the bond hearing. "It is long-settled that a competent translation is fundamental to a full and fair hearing." *Perez-Lastor v. Immigr. & Naturalization Serv.*, 208 F.3d 773, 778 (9th Cir. 2000). The Ninth Circuit has held that an "incomplete translation is the functional equivalent of no translation." *Id.* The Court finds the decision in *Mangue v. Blanche*, 2026 WL 1602517 (D. Nev. June 4, 2026), to be instructive with respect to incomplete translations during immigration bond hearings. The *Mangue* court found that the failure to translate "substantive arguments" raised between the government and IJ was one of two bases to constitute a due process violation. *Mangue*, 2026 WL 1602517 at *4. Because the translation of the proceedings was "inadequate and incomplete," the *Mangue* court found that Petitioner was entitled to a new bond hearing with competent translation under their habeas petition. *Id.*

There was a substantial risk of depriving Petitioner of his liberty interest at the hearing because of the incomplete translation provided. The IJ directed questions to the government related to 1) Petitioner's membership in the *Jacobo-Ramirez* class and 2) Petitioner's "extensive ties" in the United States and "multiple convictions." (ECF No. 11 Exhibit C). In response, counsel for the government referenced Petitioner's "pattern of domestic violence," which was characterized as "recent," "serious," and showing a "very concerning" pattern. *Id.* This was the only exchange between the IJ and the government, none of which was translated into Spanish. *Id.* Petitioner was not given an opportunity to respond to the government's arguments regarding his criminal record.

Due process requires, at minimum, that the government justifies the basis for re-detention, and that the noncitizen be given the opportunity to be heard with respect to re-detention at a meaningful time and in a meaningful manner. *Telenchana*, 2026 WL 696806 at *12, *Dieng*, 2026 WL 411857, at *8; *see also Gaitan Coreas*, 2026 WL 1121974, at *7; *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *6 (E.D.N.Y. Nov. 25, 2025). Because Petitioner could not understand or respond to the "substantive arguments" raised against him, *see Mangue* 2026 WL 1602517 at *4, his ability to raise arguments against his detention was materially inhibited. This poses a strong risk of erroneous deprivation of Petitioner's liberty interest.

The Government has a strong interest in the efficient administration of immigration laws, including those regarding detention of non-citizens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, the Government does not hold a strong interest in detaining individuals without an adequate and informed assessment of the danger that they may, or may not, pose to the community. The Court will not reach the other due process arguments raised by Petitioner and finds that Petitioner's Fifth Amendment due process rights were

violated by the incomplete translation provided at his bond hearing.

**V. Remedy**

Both Petitioner and Respondents agree that as a member of the *Jacobo-Ramirez* class, Petitioner was initially entitled to a constitutionally adequate bond hearing. Given the aforementioned procedural errors in the bond hearing, the Court finds that Petitioner's due process rights were violated. Based on the record and arguments raised, it is unclear what legal standard the IJ applied as the burden of proof in the bond hearing. Courts in this district have ruled that members of the *Jacobo-Ramirez* class are entitled to equitable relief under their habeas petitions, which may take the form of a constitutionally adequate bond hearing in which the "government must prove, by clear and convincing evidence, that Petitioner's civil detention is necessary to prevent danger to the community or to ensure his future appearance at removal proceedings." *Changyi v. Levya*, 2026 WL 1453528 at *4 (D. Nev. May 21, 2026).

**VI. Conclusion**

It is therefore ordered that the Amended Petition (ECF No. 10) is GRANTED.

It is further ordered that Respondents must provide Petitioner with a constitutionally adequate bond hearing where the government bears the burden of establishing dangerousness or flight risk by clear and convincing evidence no later than October 7, 2026.

If a bond hearing is not provided by October 7, 2026, Petitioner is to be immediately released from custody.

It is further ordered that the parties must file a joint status report within ten (10) days of providing Petitioner with a bond determination hearing.

It is further ordered that if bond is denied, Respondents must: 1) attach the order of the immigration court to the joint status report and 2) provide the

contemporaneous record of the bond hearing to Petitioner immediately upon request.

DATED: September 24, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE